IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE J. LARKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:19-cv-281-MHT-WC |
| | ) | |
| MONTGOMERY COUNTY | ) | |
| CIRCUIT COURT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 3). For good cause, it is the Recommendation of the Magistrate Judge that this case be dismissed prior to service of process pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.        INTRODUCTION**

On April 19, 2019, Plaintiff Willie J. Larkins ("Larkins" or "Plaintiff") filed this *pro se* complaint purporting to enforce a "bill in equity." Doc. 1 at 1. Because Plaintiff requested, and was granted, leave to proceed *in forma pauperis* (Docs. 2, 8), the complaint is before the undersigned for screening pursuant to 28 U.S.C. § 1915(e). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) in a non-prisoner action). The statute instructs the court to dismiss any action wherein it is determined that an *in forma pauperis* applicant's suit is "frivolous or malicious," "fails to state a claim on which

relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 42 U.S.C. § 1915(e)(2)(B)(i)–(iii).  Based upon a careful review of the complaint, the undersigned concludes that the complaint is plainly frivolous, Plaintiff has failed to state any claim upon which relief could be granted, and he seeks relief from defendants who are immune from such a suit.  Consequently, the complaint is due to be dismissed pursuant to §§ 1915(e)(2)(B)(i), (ii), and (iii).

## II.    STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Generally, complaints by *pro se* plaintiffs are read more liberally than those drafted by attorneys. *Osahar v. U.S. Postal Serv.*, 297 Fed. App'x 863, 864 (11th Cir. 2008).  A review of the sufficiency of a plaintiff's complaint for purposes of § 1915(e)(2)(B)(ii) begins with analysis of whether the complaint complies with the pleading standard applicable to all civil complaints in federal courts. *See Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) (citations omitted) ("A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6).  When determining whether to dismiss an action, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure, which requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading

2

standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A pleading is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful.  Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556.  But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more

3

than conclusions." *Iqbal*, 556 U.S. at 678–79.  Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted) (overruled on other grounds by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)); *see also Giles v. Wal-Mart Distrib. Ctr.*, 359 Fed. App'x 91, 93 (11th Cir. 2009) (internal citations and quotation omitted).  A *pro se* plaintiff is still required to include allegations for each material element of his claims, and bare legal conclusions are insufficient. *Sanford*, 2012 WL 5875712, at *2 (citing *Davilla v. Delta Air Lines,* 326 F.3d 1183, 1185 (11th Cir. 2003); *McNeil v. United States,* 508 U.S. 106, 113 (1993) (stating that "procedural rules in ordinary civil litigation" should not be interpreted "so as to excuse mistakes by those who proceed without counsel")).  Accordingly, a plaintiff's complaint, even if liberally construed, must minimally satisfy the dictates of Rule 8(a) of the Federal Rules of Civil Procedure in order to survive review under § 1915(e).

## III.     DISCUSSION

In view of these general principles, the undersigned turns to the instant complaint. Plaintiff names the Montgomery County Circuit Court and Gina J. Ishman as defendants.[1] Doc. 1 at 1.  Larkins' complaint begins by demanding the Judges in this District to "Show Cause Why the Complainant Cannot Proceed Under Equity Jurisdiction and Mandatory Judicial Notice." Doc. 1 at 1.  Larkins has styled this case as a "Bill in Equity" and states that his intent is to enforce a "[p]rivate record of settlement." Doc. 1 at 1.  Larkins claims that he "tendered 'payment' for the Setoff/Settlement of [Montgomery County Circuit Court] case/account no. CC-2012-1326." Doc. 1 at 2.  Larkins attached a copy of the "Credit Voucher/Money Order" in the amount of $40,000,000.00 USD, along with processing instructions. Docs. 1-1 at 1; 1-2 at 1.  Larkins states that the money order is "drawn from [his] Private Bond on file and recorded with the United States Department of the Treasury." Doc. 1 at 3.  It appears that Larkins' intent is for the "credit voucher/money order" to be accepted as payment to pay all of the fees related to his criminal court case, CC-2012-1326.  Doc. 1 at 2.  Larkins provided the Defendants with a deadline of ten calendar days to process the money order per his instructions and clear his account balance to $0.00. Doc. 1 at 2.  Larkins alleges that following several notices of default sent to Defendants, they have still not processed the money order and cleared his account balance;

---

[1] Although Plaintiff does not provide any identifying information for Ms. Ishman or her role in the allegations, the Court takes judicial notice that Ms. Ishman is the Montgomery County Circuit Clerk. *See* Fifteenth    Judicial    Circuit    Court    of    Alabama,    Serving    Montgomery    County, https://montgomery.alacourt.gov/circuit-clerk-gina-ishman/ (Last visited April 14, 2020).

thus, he has filed the instant "Bill in Equity" to enforce the processing of the money order. Docs. 1 at 2–3; 1-5 at 1; 1-8 at 1–2; 1-9 at 1; and 1-12 at 1.

Plaintiff's processing instructions state that the "negotiable instrument" is in accordance with Uniform Commercial Code 3-104, and it is "presented under authority of Public Law 73-10." Doc. 1-2 at 1.  Although Plaintiff in this case does not specifically identify himself as a "sovereign citizen," he is clearly advancing a common sovereign citizen theory that Public Law 73-10 and UCC 3-104 somehow allow him to satisfy his debt to Defendants by converting a demand for payment into a money order. *See Young v. PNC Bank, N.A.*, No. 16cv298, 2018 WL 1251920, at n.1 (N.D. Fla. Mar. 12, 2018) (noting that plaintiff did not identify himself as a sovereign citizen but his attempt to extinguish a lawful and legitimate debt under a bizarre legal theory bore the hallmarks of a sovereign citizen theory).

The purpose of Public Law 73-10 was to "assure uniform value to the coins and currencies" and suspend the gold standard in the United States. *See* Pub. L. No. 73–10, 48 Stat. 112–13 (1933).  No facts asserted in Plaintiff's Complaint are relevant to Public Law 73-10, as no provision in that law (1) allows Plaintiff to "convert" a payment demand into a money order to satisfy a loan; (2) provides a set-off from the U.S. Government as a means to discharge debts; or (3) voids or nullifies an application for credit or a credit account. The undersigned finds that Plaintiff's "filings here are replete with the legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign-citizen movement." *Sealey v. Branch Banking and Trust Company*, 2019 WL 1434065, at *2 (M.D. Ala., 2019); *see also Banks v. Fla.*, 2019 WL 7546620, at *2 (M.D. Fla., 2019)

6

("Though adorned with pseudo-legalese, the complaint in this action is simply nonsensical.").

Courts have consistently rejected the "outlandish legal theories" of sovereign citizens claims. *Id.*; *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (recognizing that courts routinely reject sovereign citizen legal theories as "frivolous"); *United States v. Benabe*, 654 F.3d 753, 761–67 (7th Cir. 2011) (discussing sovereign citizen arguments as having no validity in country's legal system and recommending that they be "rejected summarily, however they are presented"); *Lawrence v. Holt*, No. 18cv639, 2019 WL 1999783, at *2 (N.D. Ala. Apr. 12, 2019), *report and recommendation adopted,* No. 18cv639, 2019 WL 1989607 n.1 (N.D. Ala. May 6, 2019) (noting the Eleventh Circuit has repeatedly rejected sovereign citizen legal theories as frivolous); *Roach v. Arrisi*, 2016 WL 8943290, at *2 (M.D. Fla. 2016) (recognizing that sovereign citizen theories have been consistently rejected by courts and describing them as "utterly frivolous," "patently ludicrous," and a waste of the court's time "being paid for by hard-earned tax dollars") (citation omitted).

In *Sanford v. Robins Federal Credit Union*, *supra*, the plaintiff advanced a similar theory for discharging debts with two "electronic funds transfer instruments." *Sanford*, 2012 WL 5875712, at *1. The plaintiff claimed the defendant accepted the instruments by "operation of law" but did not release titles to the vehicles serving as security for the debts. *Id.* He then sued the defendant under various statutes, including Public Law 73-10. *Id.* In finding that the plaintiff failed to state a claim upon which relief can be granted, the *Sanford* court stated:

7

Additionally, the Plaintiff's reference to H.J. Res. 192, 73rd Cong. (1933), enacted by Pub.L. No. 73–10, 48 Stat. 112–13 (1933), is also insufficient to state a claim upon which relief can be granted…. The Plaintiff declares that presentment of the electronic funds transfer instruments "discharged [his] debt upon receipt of the instrument" and that his "[p]ayment was in full accord with" the resolution and public law.  He adds that, as a result of this law, "there exists an obligation of the Federal Government (Treasury) to discharge debts, in exchange for giving them credit to create and control the money system." The Plaintiff later explains that "[t]he discharge part of the system was established because of the bankruptcy of the united [sic] States of America in 1933."

Frankly, it is not clear to this Court how the Plaintiff finds support for his claims in the United States' suspension of the gold standard. His argument in this regard is vague and, at times, less than coherent. To some extent, it appears the Plaintiff hopes to advance a watered-down version of claims other plaintiffs have unsuccessfully attempted via Public Law 73-10, such as the "vapor money" theory, "unlawful money" theory, or "redemption" theory. *See McLaughlin v. CitiMortgage, Inc.,* 726 F. Supp. 2d 201 (D. Conn. 2010) (discussing these theories in depth and collecting cases that "universally and emphatically" reject them). Such claims are "equal parts revisionist legal history and conspiracy theory," *Bryant [v. Washington Mut. Bank,* 524 F. Supp. 2d 753, 758 (W.D. Va. 2007)], and share a common thread in their use by plaintiffs seeking to avoid debt repayment. These theories appear to all somehow rely on various supposed consequences flowing from the 1933 suspension of the gold standard.

For example, one tenant of "redemption" theory suggests that the United States has been bankrupt since suspending the gold standard in 1933, and that, as a result, the dollar is nonredeemable. Citizens thus became creditors for a bankrupt system, and the Federal Reserve Note became a debt note with no intrinsic value—or so the story goes. *McLaughlin,* 726 F. Supp. 2d at 211. Another variation suggests that when an individual executes a promissory note in favor of a bank, he has actually provided the bank "money." The bank then deposits this "money" into its own account, lists it as an asset on its ledger, and lends it back to individual. Through bookkeeping procedures, the bank has supposedly created money even though it does not actually have gold-backed funds available to lend, and the note is thus void from the outset. *See, e.g., Rudd v. KeyBank, N.A.,* 2006 WL 212096 (S.D. Ohio).

…. Courts have widely rejected arguments seeking relief pursuant to theories based on Public Law 73–10. *See McLaughlin,* 726 F. Supp. 2d at 214 (collecting cases)….

*Sanford*, 2012 WL 5875712, at *3–4 (internal court document citations omitted); *see also Wilkerson v. Gozdan*, No. 14cv693-WKW, 2014 WL 4093279, at *5 (M.D. Ala. Aug. 19, 2014) (dismissing similar claim based on Public Law 73-10 where plaintiff purportedly satisfied a loan with a credit slip and promissory note).

In *Williams v. Skelly*, No. 17cv204, 2018 WL 2337310 (W.D. Ken. May 23, 2018), the court addressed this issue in the context of student loans. To satisfy a student loan with the U.S. Department of Education, the plaintiff sent a "contract/bond" (on which he was both the secured party and debtor) to the defendant. After it was dishonored, he filed a lawsuit arguing the debt should have been discharged under Public Law 73-10 and other statutes. In dismissing the plaintiff's claim, the *Williams* court determined that the plaintiff appeared to be asserting a form of "sovereign citizen" claim against the defendant, noting that "adherents of such claims or defenses believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Id.* at *2 (citations omitted). The court went on to state that complaints based on sovereign citizen theories may be dismissed "without extended argument." *Id.* (citations and omitted).

Additionally, Plaintiff claims that the negotiable instrument is in "accordance with UCC 3-104," and reliance upon the UCC is another common part of the sovereign citizens' theory. With respect to the citation to the UCC Statute of Frauds, "[t]he UCC, itself, is not the law of any state, nor is it federal law. In order to support a cause of action, a plaintiff must rely on a state's codification of the UCC." *Gilbert v. Monaco Coach Corp.*, 352 F.

Supp. 2d 1323, 1329 (N.D. Ga. 2004); *see also Garren v. Palmer*, No. 10cv3705, 2010 WL 11647055, at *2 (N.D. Ga. Dec. 14, 2010), *report and recommendation adopted,* No. 10cv3705, 2011 WL 13318827 (N.D. Ga. Jan. 19, 2011) (noting that the UCC has not been adopted as federal law and does not create a federal cause of action); *Ojemeni v. Sanchez*, No. 10cv4100, 2010 WL 5684400, at *3 (N.D. Ga. Dec. 20, 2010), *report and recommendation adopted,* No. 10cv4100, 2011 WL 345832 (N.D. Ga. Feb. 1, 2011) (recognizing in context of federal question jurisdiction that the U.C.C. is not a federal statute); and *Taylor v. Wachovia Mortg. Corp.,* No. 1:07–cv–2671–TWT, 2009 WL 249353, *8 (N.D. Ga. Jan. 30, 2009) (same).  Plaintiff has failed to rely on a state's codification of the UCC in this case, so any claim based on the UCC Statute of Frauds also fails.

As far as the undersigned can determine, Plaintiff's Complaint is a frivolous sovereign citizen complaint.  It is based on a theory that Plaintiff has the ability to convert a payment demand into a money order and magically extinguish his debt. *See Frye v. Barbour*, 2017 WL 4226531, at *3 (M.D. Fla. 2017) ("Even liberally construed, Plaintiff's 'Bill in Equity' filings are confusing, incoherent, and unintelligible.").  For all of the reasons stated above, the undersigned concludes that Plaintiff's complaint is frivolous and that, alternatively, Plaintiff has failed to state any claim upon which relief could be granted. Thus, the undersigned recommends that this case be dismissed pursuant to 42 U.S.C. §§ 1915(e)(2)(B)(i) and (ii).

Additionally, Plaintiff names the Montgomery County Circuit Court and Gina J. Ishman, the Montgomery County Circuit Clerk, as defendants in this action.  "[T]o the

extent that the complaint [. . .] contain[s] a claim against the Montgomery County Circuit Court, the law is well settled that state courts are not persons within the meaning of 42 U.S.C. § 1983."[2] *Lowe v. Alabama*, 2013 WL 6816382, at *2 (M.D. Ala. 2013) (citing *Moity v. Louisiana State Bar Association,* 414 F. Supp. 180, 182 (E.D. La. 1976), *aff'd,* 537 F.2d 1141 (5th Cir. 1976); *McFarland v. Folsom,* 854 F. Supp. 862, 874 (M.D. Ala. 1994)).

Additionally, a clerk of court enjoys a "'narrower ambit of immunity than judges,'" in that they "'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction, and only qualified immunity from all other actions for damages.'" *Hyland v. Kolhage*, 267 Fed. App'x 836, 842 (11th Cir. 2008) (quoting *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir. 1981)). "Additionally, where a court clerk acts pursuant to authority granted by state law and acts on behalf of a court, the clerk is absolutely immune from damages liability when sued under 42 U.S.C. § 1983 because she is performing a judicial function." *Cooper v. Carter*, 2007 WL 215572, at *4 (M.D. Ala. 2007) (citing *Scott v. Dixon,* 720 F.2d 1542 (11th Cir. 1983). "When a clerk files or refuses to file a document with the court, she is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction." *Foster v. Etowah County Clerk's Office*, 2015 WL 4999667, at *3 (N.D. Ala. 2015) (citing *Harris v. Suter,* 3 Fed. App'x 365, 366 (6th Cir. 2001)); *see also Bendiburg v. Dempsey,* 909 F.2d

---

[2] Plaintiff objects to this case being construed as a 42 U.S.C. § 1983 claim and argues instead that he filed a "Bill in Equity" and that he has "a right to enforce the private settlement agreement with the Defendants through a Bill in Equity and no one should stand in the way of [him] doing so." Doc. 13 at 1.  However, as previously discussed, the "bill in equity" and "redemption" theories are purely fictional nonsense and Plaintiff has failed to assert a valid cause of action.

463, 470 (11th Cir. 1990) ("qualified immunity acts as a shield to protect state actors from civil liability unless the official is plainly incompetent, knowingly violates the law, or by his conduct violates clearly established statutes or constitutional rights of which a reasonable person should have known. Mere negligence does not rise to the level of a Fourteenth Amendment violation." (citations omitted)).   It is clearly within the Montgomery County Circuit Clerk's jurisdiction to refuse to accept an obviously fake money order as payment for a lawful debt, and Ms. Ishman is entitled to immunity.

Therefore, the undersigned also concludes that Plaintiff's complaint is due to be dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B)(iii) because it "seeks monetary relief against a defendant who is immune from such relief."

## IV.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that this case be DISMISSED prior to service of process, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii) and (iii),[3] and that Plaintiff's *Motion for Summary Judgment* (Doc. 11), *Motion to Correct*

---

[3] The undersigned is recommending dismissal of Plaintiff's Complaint without first asking Plaintiff to amend the complaint.  The undersigned believes requesting such amendment would be futile because the complaint is frivolous and not merely deficient.  Accordingly, leave to amend Plaintiffs' complaint need not be afforded in this instance. *See, e.g., Henry v. Fernandez-Rundle*, 773 Fed. Appx 596, 597 (11th Cir. 2019) (affirming dismissal without leave to amend of a frivolous, sovereign-citizen like complaint); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile.").  Furthermore, the opportunity to amend ordinarily contemplated by governing case law, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002), is not inconsistent with the undersigned's recommendation of dismissal.  Plaintiff will be permitted to file objections to the findings set forth in this Recommendation, and thus he is afforded the requisite opportunity to be heard about the deficiencies of his complaint prior to any dismissal of the complaint.

*the Record* (Doc. 13), and *Motion to Commence Prosecution and Motion for Defendants to Respond* (Doc. 14) be DENIED as moot.  It is further

ORDERED that Plaintiff may file any objections to this Recommendation **on or before May 5, 2020**. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which Plaintiff objects.  Frivolous, conclusive, or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of "plain error if necessary in the interests of justice." 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of April, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE